**BARTHEL & BARTHEL, APC**
Nicholas Barthel, Esq. (319105)
nick@barthelbarthel.com
2173 Salk Ave., Ste. 250
Carlsbad, CA 92008
Telephone: (760) 259-0033
Facsimile: (760) 536-9010

*[Additional Counsel May Appear on Signature Page]*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARTINA HAMILTON and NOAM SHIMLER,<br><br>                  *Plaintiffs*,<br><br>      v.<br><br>COINBASE, INC.,<br><br>                  *Defendant*. | Case No.<br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

Martina Hamilton and Noam Shimler, Plaintiffs herein, by their attorneys, allege and complain of Defendant Coinbase, Inc. as follows:

## PRELIMINARY STATEMENT

1.      On or about December 21, 2022, someone unknown to Plaintiffs made multiple unauthorized transactions that drained Mr. Shimler's Coinbase account (the "Account") of approximately $47,000 (the "Stolen Funds").

- 1

2.     Plaintiffs immediately and repeatedly advised Coinbase, Inc. ("Defendant" or "Coinbase") that the transactions were unauthorized.

3.     Congress passed the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 *et seq.* (EFTA) specifically to protect consumers in circumstances such as these.  State laws provide them with similar protections.

4.     Nevertheless, despite its obligation under federal and state laws to promptly credit Mr. Shimler's account in full, Coinbase refused to credit Mr. Shimler's account for the unauthorized transactions.

5.     Plaintiffs therefore bring claims against Coinbase for violations of the Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq.* ("EFTA"); Article 4A of the California Uniform Commercial Code ("UCC"); California Business & Professions Code § 17200, et seq.; Conversion; and breach of contract.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

7.     Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

8.     Jurisdiction over Plaintiffs' claim for declaratory relief is conferred by 28 U.S.C. § 2201.

9.     Venue is proper in this District because Defendant resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

10.     Plaintiffs are natural persons and citizens of United States, residing in Fresno, California.

11.     Plaintiffs are "consumers" as defined by the EFTA, 15 U.S.C. § 1693a(6). Their account with Coinbase was used for personal, family, or household purposes.

12.     Coinbase, Inc. is a "financial institution" formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

13.     Coinbase's headquarters and principal place of business are located in San Francisco, California.

## FACTS

14.     Plaintiffs opened a Coinbase account under Mr. Shimler's name. Both Ms. Hamilton and Mr. Shimler use and own the account.

15.     On or about December 21, 2022, the value on Mr. Shimler's Coinbase account was approximately $47,000.

16.     On or about December 21, 2022, Plaintiffs received a call from a woman purporting to be a representative from Coinbase. The caller knew many details about Plaintiffs and their account with Coinbase, and Plaintiffs therefore assumed that the person calling was a legitimate Coinbase representative.

17.     The apparently fraudulent "Coinbase representative" informed Plaintiffs that there have been several breach attempts on the account and told them to reset the password. They did so.

18.     Later that same day, Plaintiffs noticed that the account had been drained. They called Coinbase immediately to report the unauthorized transactions.

19.     On or about December 21, 2022, Plaintiff filed a report with the Internet Crime Complaint Center, a Police Report and an FBI report.

20.     To date, Plaintiffs have not been able to access the account.

21.     To date, Coinbase has not restored the Stolen Funds to Plaintiffs' account.

## FIRST CLAIM FOR RELIEF
### (Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*)

22.     Plaintiffs reallege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

23.     Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

24.     Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

25.     This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>
> (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the

consumer's liability shall not exceed the lesser of $500 or the
sum of:

(i) $50 or the amount of unauthorized transfers that occur
within the two business days, whichever is less; and

(ii) The amount of unauthorized transfers that occur after the
close of two business days and before notice to the
institution, provided the institution establishes that these
transfers would not have occurred had the consumer notified
the institution within that two-day period.

26.    The EFTA places the burden of proof on the financial institution to

demonstrate that challenged transfers were authorized. 15 U.S.C. § 1693g(b).

27.    Defendant cannot meet its burden of proof here, where Plaintiffs:

a.  Promptly disputed the transactions;

b.  Have no criminal history

c.  Have no history of filing false disputes; and

d.  The thefts are inconsistent with Plaintiffs' pattern of use.

28.    Defendant also violated the EFTA by failing to provide any

meaningful explanation of the grounds upon which it relied in denying Plaintiffs'

claim. 15 U.S.C. § 1693f(d).  See CFPB Supervisory Highlights, Issue 22, Summer

2020, Section 2.3.3 ("Financial institutions must go beyond just providing the

findings to actually explain or give the reasons for or cause of those findings.").

29.    As a direct and proximate result of Defendant's conduct,  Plaintiffs

have suffered actual damages, including but not limited to past and future

monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

30.    On information and belief, Defendant did not conduct a good faith investigation regarding the stolen funds.

31.    Defendant did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiffs provided to Defendant.

32.    Defendant did not credit Plaintiffs' account for the Stolen Funds.

33.    Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiffs' account was not in error, and also constitutes a knowing and willful conclusion that Plaintiffs' account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiffs to treble damages in addition to all other relief sought herein.  Defendant's failure to provisionally and finally credit Plaintiffs' account provides an additional basis for treble damages.

34.    As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(California UCC Article 4A)**

35.     Plaintiffs reallege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

36.     Pursuant to UCC § 4-A-202(1), "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency."

UCC § 4-A-202(2) further provides:

> If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank is effective as the order of the customer, whether or not authorized, if
>
> (a) the security procedure is a commercially reasonable method of providing security against unauthorized payment orders, and
>
> (b) the bank proves that it accepted the payment order in good faith and in compliance with the security procedure and any written agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer.

37.     Coinbase failed to establish and/or follow a commercially reasonable security procedure with regard to Plaintiffs' Account.

38.     Specifically, Coinbase's security procedure fails to flag and hold obviously fraudulent and unauthorized transactions such as the ones at issue here.

39.     The unauthorized transactions on Plaintiffs' Account bore a series of

characteristics that, when taken together, render the transactions suspect, and likely

to be fraudulent.

40.     For example, and without limitation, the transactions:

    a.      were entirely out of character with Plaintiffs' history of account

usage;

    b.      drained the Account balance;

    c.      occurred within less than 24 hours;

    d.      likely occurred on a new device not previously associated with

        the Account;

    e.      likely occurred via a new IP address not previously associated

        with the Account; and

    f.      occurred immediately after the password on the account was

        reset.

41.     Any commercially reasonable policy would have assessed this

combination of troubling factors, flagged the transactions as suspect, and held or

rejected the transactions as likely to be fraudulent.

42.     Indeed, Coinbase acknowledged the suspicious and unauthorized

nature of these transactions based on this same information – all of which was

available to it at the time of the transactions – but only after it processed the transfers.

43.     Coinbase also did not process the transfers in good faith. Specifically, Coinbase's willful blindness to the many badges of fraud present here constituted bad faith acceptance of the unauthorized payment orders.

44.     In sum, Coinbase violated UCC § 4-A-202 by accepting unauthorized payment orders in connection with Plaintiffs' Coinbase account, failing to establish and/or follow commercially reasonable security procedures, and not processing the transactions in good faith.

45.     Plaintiffs are therefore entitled to a refund of the full amounts of the unauthorized payment orders, plus interest.

### THIRD CLAIM FOR RELIEF
**(California Business & Professions Code § 17200, et seq.)**

46.     Plaintiffs reallege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

47.     Defendant engaged in unfair acts and practices with respect to its services by denying transactions alleged to be unauthorized without first conducting a reasonable inquiry; by denying transactions alleged to be unauthorized despite finding that the transactions were unauthorized; by denying transactions alleged to be unauthorized that it has no legitimate basis to conclude were authorized; by denying requests to reverse unauthorized transactions without notifying the accountholder of the accountholder's right to reproductions of all

documents on which it relied in reaching its decision; and by establishing sub-standard security practices and procedures described herein.

48.   The acts and practices complained of herein constitute unfair business practices because they are immoral, unethical, oppressive, unscrupulous, unconscionable, substantially injurious to the general public, and offensive to public policy.

49.   Defendant's acts and practices were likely to deceive Plaintiffs and the public regarding their rights.

50.   Defendant failed to completely investigate the fraudulent transactions, denied transactions were fraudulent with no legitimate basis for doing so, placed the burden on Plaintiffs and the general public to prove the transactions were unauthorized when the law requires the opposite, and failed to inform Plaintiffs and the general public of their legal rights.

51.   The business acts and practices of Defendant constitute fraudulent business practices because they are likely to deceive the public and affected consumers as to their legal rights and obligations, and by use of such deception, may preclude consumers from exercising legal rights to which they are entitled.

52.   As a direct and proximate result of Defendant's acts and unfair practices, Plaintiffs and the public were injured and lost money or property, including but not limited to, the harm suffered as a result of fraudulent transfers made their accounts with Defendant.

53.   As a direct and proximate result of the acts and practices described herein, Defendant has received and collected substantial monies or property to which Defendant is not entitled. These illicit profits should be disgorged.

54.   Defendant deals uniformly with a large volume of customers who dispute unauthorized charges. For example, Defendant's misconduct as set forth above is part of uniform policy and practice, as reflected in its standardized,

boilerplate form communications. Each of Defendant's deceptive acts and practices set forth above therefore have a broad impact on consumers.

55.     The harm these practices caused to Plaintiffs and the general public outweigh their utility, if any.

56.     Plaintiffs are entitled under the UCL to enjoin these acts and practices and to obtain restitution of all funds obtained by Defendant by reason of and through the use of these unlawful and fraudulent acts and practices. Pursuant to the UCL, Plaintiffs, individually and on behalf of all members of the general public who are, have been, or may be subjected to Defendant's unlawful and fraudulent business acts and practices are entitled to declaratory and preliminary and permanent injunctive relief prohibiting such practices in the future, and other orders as may be necessary to restore to any person in interest, any money or property, real or personal, which Defendant acquired by means of such unlawful, unfair and fraudulent business practices.

57.     The unlawful, unfair, and fraudulent business acts and practices of Defendant described herein present a continuing threat to Plaintiffs and the public in that Defendant is currently engaging in such acts and practices and will persist and continue to do so unless and until an injunction is issued by this Court.

58.     In addition, Plaintiffs are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action under California Code of Civil Procedure §1021.5.

## FOURTH CLAIM FOR RELIEF
### (Common Law Conversion)

59.     Plaintiffs reallege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

60.     Plaintiffs have a possessory right to the funds in the Account.

61.     Under the circumstances set forth herein, the funds constituted personal property.

62.     Coinbase intentionally and without authority assumed and exercised control over Plaintiffs' funds.

63.     Coinbase's dominion over the funds and interference with the funds—including allowing the transfer of the Stolen Funds out of Plaintiffs' Account—was in derogation of Plaintiffs' rights, including but not limited to Plaintiffs' right to use the funds as they saw fit and have the funds returned to them.

64.     Plaintiffs demanded that Coinbase return the funds, but it has not.

65.     As a result of Coinbase's actions, Plaintiffs has suffered actual damages, including but not limited to the amount of the funds converted.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Contract)**

66.     Plaintiffs repeat and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

67.     On information and belief, Coinbase had an implied duty under its contract with Plaintiffs to use commercially reasonable efforts to protect Plaintiffs' account from unauthorized access.

68.     On information and belief, Coinbase further assumed a duty under the contract to make Plaintiffs whole for any unauthorized access, conditioned upon

his notifying Coinbase of the unauthorized access.

69.     By reporting the unauthorized transfers to Coinbase on the day they

occurred, Plaintiffs met any duty imposed by contract to provide notice of

unauthorized access to Coinbase.

**WHEREFORE**, Plaintiffs respectfully prays for relief as set forth below:

A.     An award of actual damages, including but not limited to the amount of
       the unauthorized charges (and all associated interest, fees and costs),
       and emotional distress;

B.     An award of statutory damages;

C.     An award of punitive damages;

D.     An award of treble damages;

E.     An order of restitution;

F.     Pre-judgment interest;

G.     Attorneys' fees, costs, and expenses;

H.     An order finding and declaring that Defendant's acts and practices as
       challenged herein are unlawful, unfair, and fraudulent;

I.     Injunctive relief pursuant to California Business and Professions Code
       §17203, prohibiting Defendant from continuing its unlawful conduct,
       including but not limited to prohibiting Defendant from (a) denying an
       unauthorized transaction dispute without first conducting a reasonable

inquiry into the allegedly unauthorized transaction and reasonably

finding that the transaction was authorized; and (b) denying any request

to reverse allegedly unauthorized transactions without notifying the

accountholder of the accountholder's right to reproductions of all

documents on which Defendant relied in reaching its decision; and

J.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by

jury as to all issues so triable.

RESPECTFULLY SUBMITTED and DATED this 12th day of September,

2023.

BARTHEL & BARTHEL, APC

By: */s/Nicholas Barthel*
Nicholas Barthel, Esq.

SCHLANGER LAW GROUP, LLP

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger, *Pro Hac Vice*
*Forthcoming*
Email: dschlanger@consumerprotection.net
SCHLANGER LAW GROUP, LLP
80 Broad Street, Suite 3103
New York, New York 10004
Telephone: (212) 500-6114
Facsimile: (646) 612-7996

*/s/Martin Bienstock*

Martin Bienstock, *Pro Hac Vice*
*Forthcoming*
Email: Mbienstock@BienstockPLLC.com
BIENSTOCK PLLC
1629 K St. NW,
Suite 300
Washington, DC , 20006
Telephone: 202-908- 6601

*Attorneys for Plaintiffs*

COMPLAINT - 16